UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

JOSE BARRERA SANCHEZ, individually
and on behalf of others similarly situated,

                    Plaintiff,

           -against-

MS. WINE SHOP INC. d/b/a/ BEST
BUY WINE & SPIRITS and JUAN LOPEZ,

                  Defendants.

-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22-CV-2178 (PKC) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

       Plaintiff Jose Barrera Sanchez commenced this action against Defendants Ms.

Wine Shop Inc. d/b/a Best Buy Wine & Spirits and Juan Lopez on April 15, 2022.

(Complaint ("Compl."), ECF No. 1.) Plaintiff alleges various claims, including violations

of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York

Labor Law ("NYLL"), Art. 6 § 190 *et seq.*

       On June 14, 2022, the Clerk of Court certified the default of both Defendants for

failing to file an answer or to otherwise move with respect to the Complaint pursuant to

Rule 55(a) of the Federal Rules of Civil Procedure. (Clerk's Entry of Default, ECF No.

13.) Plaintiff subsequently moved for default judgment on July 7, 2022. (Mot. for Default

J., ECF No. 15.) For the reasons set forth below, this Court recommends that Plaintiff's

Motion for Default Judgment be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

       Plaintiff alleges that Defendants employed him as a delivery worker, helper, and

cleaner from approximately February 2009 to January 2022. (Compl., ECF No. 1, ¶ 20.)

During this period, he regularly worked six days per week. (*Id*. ¶ 21.) Plaintiff claims that he was routinely required to work seventy hours or more hours during the relevant time period. (*Id*. ¶¶ 22–23.) Specifically, he alleges that he was paid a flat weekly rate of approximately $460 until December 2017, approximately $550 until December 2019, approximately $750 until December 2020, and approximately $800 until January 2022. (*Id*. ¶ 24.) Plaintiff further claims that, although he worked seventy or more hours each week, Defendants did not pay him the required overtime compensation of time and a half (1.5x) for hours worked in excess of 40 hours per work week. (*Id*. ¶ 25.)

According to the Complaint, Ms. Wine Shop Inc. d/b/a/ Best Buy Wine & Spirits ("Corporate Defendant") was an enterprise engaged in interstate commerce. (*Id*. ¶ 18.) Plaintiff avers that the individual defendant named in the complaint, Defendant Lopez, is the owner and agent of Corporate Defendant. (*Id*. ¶¶ 9–10.)

Based on these allegations, Plaintiff asserts claims against Defendants for willfully violating the overtime pay provisions of the FLSA and NYLL. (Compl., ECF No. 1, ¶¶ 45–55.) Plaintiff also alleges that Defendants failed to pay minimum wage, in violation of the FLSA and NYLL (*id*. ¶¶ 56–66); that he is entitled to spread-of-hours pay under the NYLL (*id*. ¶¶ 67–69); and that Defendants violated the New York Wage Theft Prevention Act, NYLL §§ 195-1 and 195-3, by failing to provide proper notice of pay and wage statements. (*Id*. ¶¶ 70–75.)

Service of the Summons and Complaint upon Individual Defendant Juan Lopez was effected by in-person service on a person identified as a "Manager" of the Corporate Defendant, at the location of the Corporate Defendant's store, at 701 Fulton St., Brooklyn, NY 11217, on April 20, 2022, and by mail to the business address, on April 22, 2022. (*See* Aff. of Service, ECF No. 8-1; *see also* Compl., ECF No. 1, ¶ 1 (specifying address of Corporate Defendant as 701 Fulton St., Brooklyn, NY 11217).) Service was

2

made on Corporate Defendant by serving the New York Secretary of State on April 21, 2022. (*See* Aff. of Service, ECF No. 9.) On July 7, 2022, Plaintiff filed the Motion for Default Judgment and accompanying documents. (Mot. for Default J., ECF No. 15; Aff./Decl. in Supp. of Mot. for Default J., ECF No. 16.) Plaintiff certified that the default motion paperwork was sent to Defendants by mail on July 8, 2022. (Aff. of Service of Mot. for Default J., ECF No. 17.) On July 13, 2022, this Court issued notice of a status conference on the default motion and directed that the notice be sent to three addresses associated with Defendants, together with a full copy of the docket sheet. (July 13, 2022 ECF Scheduling Order, ECF No. 18.) On August 11, 2022, Defendants failed to appear for the status conference. (*See* Aug. 11, 2022 ECF Minute Entry and Order.)

## DISCUSSION

### I.    Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk of Court enters a default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). After a certificate of default is entered, the district court may, on a plaintiff's application, enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The court "may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). In addition, the plaintiff must take several steps before the court will grant default judgment. The plaintiff must

demonstrate proper service of the summons and complaint. *See Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2.[1]

The court must then determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Id.* However, "a pleading's legal conclusions are not assumed to be true." *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2758272 (E.D.N.Y. May 12, 2016). Rather, "on a motion for a default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief." *Id.*

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff

---

[1] Having carefully reviewed all of the filings in the case, the Court notes that Plaintiff's motion papers comport with Local Rule 7.1, and that Plaintiff has established procedural compliance with Local Rules 55.1 and 55.2, which govern default judgment motions. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a) (*see* Request for Certificate of Default, ECF No. 12); (2) filed affidavits demonstrating that Defendants have failed to defend the action, the pleadings were properly served, and the individual against whom the default is sought is "not an infant, in the military, or an incompetent person," in accordance with Local Rule 55.1(b) (*see* Aff. in Supp. of Mot. for Default J., ECF No. 16; Aff. of Service, ECF No. 8-1 (detailing reasons to conclude Defendant Lopez is not in the military); Aff. of Service, ECF No. 9); and (3) certified the mailing of the motion papers to Defendant Lopez and the business addresses of the Corporate Defendant, in accordance with Local Rule 55.2(c). (*See* Aff. of Service, ECF No. 17 (certifying mailing to Defendant Lopez at various addresses, including the address of Corporate Defendant, as well as mailing to Corporate Defendant at the 701 Fulton Street address).)

bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, No. 18-CV-6476 (ARR), 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). The court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *report and recommendation adopted*, No. 10-CV-4288 (JBW), 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Entry of Default Judgment

A threshold question before reaching liability or damages is whether the Defendants' conduct is sufficient to warrant a default judgment being entered. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Basile v. Wiggs*, No. 08-CV-7549 (CS) (GAY), 2009 WL 1561769, at *4 (S.D.N.Y. May 29, 2009) (listing factors for consideration including defaulting party's bad faith, "'the possibility of prejudice to the plaintiff, the merits of the plaintiff['s] substantive claim, the sufficiency of the complaint, the sum at stake, [and] whether the default was due to

5

excusable neglect'" (second alteration in the original) (quoting *Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999))).

Because Defendants have not responded to any of the Court's summons, the Court cannot ascertain whether Defendants' default was willful or what defense they would have raised. However, the Court notes that a "'defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). This requires that there be "evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (quotation marks omitted). Absent any response from Defendants, despite extensive efforts to serve and notify them of the pending default motion, the Court weighs these factors in favor of default. The final factor is whether, in the absence of a default judgment, the non-defaulting party would be prejudiced. This factor weighs strongly in favor of the entry of a default judgment here because "[d]enying this motion would be prejudicial to Plaintiff[] 'as there are no additional steps available to secure relief in this Court.'" *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 124 (E.D.N.Y. 2011) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

## III.  Liability

### A.  Liability Under the FLSA

To establish liability under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship

is not exempted from . . . [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018).

    1. *Employers Subject to the FLSA*

An employer is subject to both the minimum wage and overtime provisions of the FLSA if (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207; *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007). A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. §§ 203(s)(1)(A)(i)–(ii). "Commerce" is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

In the Complaint, Plaintiff alleges that Corporate Defendant is an enterprise "engaged in commerce" and thus subject to the FLSA. (Compl., ECF No. 1, ¶ 18.) Plaintiff's assertion that Corporate Defendant is an enterprise is a legal conclusion and, therefore, not automatically assumed to be true. In support of this contention, Plaintiff alleges that Corporate Defendant "(i) has purchased goods, tools, and supplies for its business through the streams and channels of interstate commerce, and has had employees engaged in interstate commerce, and/or in the production of goods intended for commerce, and handle, sell and otherwise work with goods and material

that have been moved in or produced for commerce by any person[;] and (ii) has had annual gross volume of sales of not less than $500,000." (*Id.*)

Although Plaintiff's allegations are somewhat conclusory, courts have noted that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quotation marks omitted); *see also Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009). In addition, even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie*, 997 F. Supp. at 530. Here, the Court may safely infer that such goods and materials were used in the operation of a business like the one described in this case, which is a retailer of wine and spirits. (*See* Compl., ECF No. 1, ¶ 18.) Indeed, courts must "draw all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. Courts may also infer that an employer is an "enterprise engaged in commerce" within the meaning of the FLSA where, based on the plaintiff's factual allegations accepted as true, "it is simply inconceivable that none of the [goods] used . . . originated outside of New York." *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009); *cf. Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding a complaint that simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State"); *Rodriguez*, 784 F. Supp. 2d at 121 (finding that the plaintiffs' complaint fairly alleged that the defendant company was "an enterprise engaged in commerce" under the FLSA because it was "logical to infer . . . that the cleaning supplies utilized by the Plaintiffs originated outside of New York"). The same conclusion can be easily

reached here. Given the nature of Corporate Defendant's business, it is reasonable to infer that the wines and spirits sold at Corporate Defendant's store were not exclusively from New York State. Accordingly, the Court finds that Plaintiff's allegations are sufficient to establish that Corporate Defendant is subject to the FLSA.

With respect to Defendant Lopez, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question[,] . . . and individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." *Saucedo*, 2016 WL 8376837, at *5 (citation omitted). Here, Plaintiff alleges that Defendant Lopez had "power and authority over all the final personnel decisions," "the exclusive final power to hire the employees . . . including the Plaintiff," "exclusive final power over the firing and terminating of the employees . . . including Plaintiff," and was "responsible for determining, establishing, and paying the wages of all employees" of Corporate Defendant, including Plaintiff. (Compl., ECF No. 1, ¶¶ 12, 14–16.) Taking these allegations as true in the context of this default, the Court finds that Defendant Lopez was an employer subject to the FLSA. *See, e.g.*, *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *4 n.4 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

2.  *Employees Covered by the FLSA*

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff's Complaint alleges that Corporate Defendant employed him as a delivery worker, helper, and cleaner while performing related miscellaneous duties for Defendants. (Compl., ECF No. 1, ¶ 20.) "It follows, therefore, that for

purposes of this default, he qualifies as an 'employee' under the FLSA." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014); *see also Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) (stating that the "ultimate question is . . . 'whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]'" (alterations in original) (quoting *Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.*, 615 F. Supp. 2d 186, 193 (S.D.N.Y. 2009))).

3. *FLSA Exemptions*

Finally, the Court does not find any basis for exempting the employment relationship at issue here from the FLSA's provisions. *See* 29 U.S.C. § 213(a) (setting forth the relevant exemptions). As noted above, Plaintiff alleges that Defendants employed him as a delivery worker, helper, and cleaner — types of employment that are not contemplated by the statutory exemptions. (Compl., ECF No. 1, ¶ 20.) Therefore, for the purposes of this default motion, Plaintiff has offered sufficient factual allegations to establish the threshold requirements for a claim under the FLSA against Defendants.

**B. Liability Under the NYLL**

To recover under the NYLL, Plaintiff must first "prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (quotation marks omitted) (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2); *see also Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407–08 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013). However, the NYLL's definition of an employer is "broader than that contained in the FLSA." *Ethelberth*, 91 F. Supp. 3d at 360. It includes "any individual, partnership, association, corporation, limited liability

company, business trust, legal representative, or any organized group of persons acting as employer." NYLL § 651(6).

Based on the allegations set forth in the Complaint and discussed above, Plaintiff has sufficiently pled that he was an employee of Defendants and that they were employers within the meaning of Section 190 of the NYLL. Courts in this district have found that a plaintiff who "provides information in the complaint as to where he worked, his position[,] and the dates of his employment" has "sufficiently alleged employee status" in the context of a default judgment motion. *Suggs v. Crosslands Transp., Inc.*, No. 13-CV-6731 (ARR) (MDG), 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 26, 2015).

As discussed above, Plaintiff alleges that he was employed as a delivery worker, helper, and cleaner at Defendants' wine business from in or around February 2009 to in or around January 2022. (Compl., ECF No. 1, ¶ 20.) Taking his claims as true, Plaintiff has alleged an employee relationship with Defendants subject to the NYLL.

## C. Violations of the FLSA and the NYLL

Having found that Plaintiff qualifies for protection under the FLSA as well as New York's labor laws, the Court must now decide whether Plaintiff is entitled to a default judgment on any of his claims for relief. As a threshold matter, the Court notes that Plaintiff filed his claims within the statutes of limitations under federal and state law only as to certain years of his employment. *See* 29 U.S.C. § 255(a); NYLL § 198(3).[2]

---

[2] The FLSA generally provides for a two-year statute of limitations for enforcement of its provisions, or a three-year statute for "willful" violations. 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). The statute of limitations under the NYLL is six years. NYLL §§ 198(3), 663(3). Plaintiff commenced this action on April 15, 2022, claiming that he worked for

1. *Violation of the FLSA's and the NYLL's Overtime Provisions*

Plaintiff alleges that Defendants violated the FLSA and the NYLL by failing to pay him overtime wages for hours worked in excess of 40 hours per week. Accepting Plaintiff's factual allegations as true, this Court recommends finding that Defendants' default amounts to an admission of liability for violating the overtime provisions of the FLSA and the NYLL.

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). In order to establish liability under the FLSA for unpaid overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87–88 (2d Cir. 2003)). Employers that violate this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Similarly, the NYLL establishes certain minimum wage rates and requires that employees be compensated for overtime at "one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

---

Defendants from February 2009 until January 2022. (Compl., ECF No. 1, ¶ 7.) Given the six-year statute of limitations under the NYLL, Plaintiff may only recover as to his wage claims from April 15, 2016 through January 2022.

Absent statutory exceptions, a flat sum compensation arrangement generally violates the overtime requirements of the FLSA and the NYLL when an employee works in excess of 40 hours per week without additional hourly compensation. *See, e.g.*, *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017) (finding defendants in default violated the FLSA and the NYLL overtime wage provisions where plaintiffs worked varying amounts in excess of 40 hours for a flat sum per week without additional compensation).

Such is the case before the Court. Plaintiff claims that, while working for Defendants, he regularly worked seventy or more hours each week. (Compl., ECF No. 1, ¶ 23.) Plaintiff alleges that Defendants paid him a flat rate of approximately $460 per week from in or around January 2016 until in or around December 2017, $550 per week from in or around January 2018 until in or around December 2019, $750 per week from in or around January 2020 until in or around December 2020, and $800 per week from in or around January 2021 until in or around January 2022, regardless of how many hours he worked over 40 hours. (*Id.* ¶ 24.) Plaintiff further alleges that Defendants "had knowledge that the Plaintiff and the Collective Class regularly performed work requiring overtime pay." (*Id.* ¶ 38.) Plaintiff thus sufficiently alleges that Defendants failed to compensate him with overtime pay for hours worked in excess of 40 hours per week during the entirety of the period claimed, in violation of the FLSA and the NYLL.

2. *Violation of the FLSA's and the NYLL's Minimum Wage Provisions*

Plaintiff also alleges that Defendants violated the FLSA and the NYLL by failing to pay him minimum wages for hours worked. (Compl., ECF No. 1, ¶¶ 56–66.) Accepting Plaintiff's factual allegations as true, this Court recommends finding that Defendants' default amounts to an admission of liability as to these claims.

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206(a); NYLL § 652. Employers that violate this provision of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The federal minimum wage has been $7.25 since July 24, 2009. *See* U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited Nov. 14, 2022). During the relevant time period, the minimum wage for New York City businesses with eleven or more employees was $9.00 per hour until December 31, 2016; $11.00 per hour from December 31, 2016 until December 31, 2017; $13.00 per hour from December 31, 2017 until December 31, 2018; and $15.00 per hour since December 31, 2018.[3] NYLL § 652(1)(a)(i).

"For purposes of determining whether Plaintiff[] [was] paid the prevailing minimum wage, the Court must determine [his] regular hourly rate of pay." *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (DLI) (RER), 2018 WL 9945754, at *4 (E.D.N.Y. Oct. 17, 2018). Because Plaintiff is not covered by the New York Hospitality Industry Wage Order, as discussed further below, "the regular hourly rate of pay equals the Plaintiff['s] total weekly pay divided by the total number of hours" worked in a given week. *Id.* As set forth more fully below, for purposes of this default motion, Plaintiff has adequately alleged that his regular hourly rate of pay was less than the New York City minimum hourly wage during the relevant time period. Accordingly,

---

[3] Plaintiff alleges that Defendants employed between 10 and 20 employees. (Compl., ECF No. 1, ¶ 35.)

Defendants should be held liable in an amount equal to Plaintiff's unpaid minimum wages.

   3.  *Violation of the New York Spread-of-Hours Provision*

Under the NYLL, employees who make minimum wage or less are entitled to an additional hour of pay, at the prevailing minimum wage, for every day they work more than 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; *see also Fermin*, 93 F. Supp. 3d at 45–46 ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage."); *Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007) ("[T]he spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law."). Plaintiff has adequately alleged that he worked more than ten hours per day for approximately five days per week during the relevant time period and that Defendants failed to pay him an additional hour of pay for each of those days. (Compl., ECF No. 1, ¶ 27.) Defendants are therefore liable for spread-of-hours pay, as detailed below.

   4.  *Violation of the NYLL's Notice and Pay Stub Requirements*

      a.  Failure to Provide a Written Wage Notice

"The Wage Theft Prevention Act ('WTPA') amended NYLL § 195(1) in 2011 to require employers to provide written notice to employees that contained specific categories of information concerning their wages at the time of hiring" and on or before February first of each subsequent year of employment. *Thompson v. Hyun Suk Park*, No. 18-CV-0006 (AMD) (ST), 2020 WL 5822455, at *5 (E.D.N.Y. Sept. 1, 2020) (quotation marks omitted), *report and recommendation adopted*, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020). Specifically, the NYLL now requires that employers provide their employees "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission,

or other." NYLL § 195-1(a). This provision took effect on April 9, 2011, after the date Plaintiff alleges to have started working for Defendants, and the "WTPA does not apply retroactively." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 510 (S.D.N.Y. 2017). Accordingly, "'an employee who began working before the WTPA took effect on April 9, 2011, may not bring a claim for an employer's failure to provide wage notices.'" *Pierre v. Hajar, Inc.*, No. 15-CV-2772 (ENV) (RLM), 2018 WL 2393158, at *5 (E.D.N.Y. Mar. 28, 2018) (quoting *Gamero*, 272 F. Supp. 3d at 510).[4] Plaintiff alleges that Defendants "willfully failed to provide Plaintiff with a written notice" within the meaning of NYLL § 195-1(a) of his applicable regular rate of pay. (Compl., ECF No. 1, ¶ 30.) However, because Plaintiff alleges that he started work for Defendants in or around February 2009, he is not entitled to recovery on his wage notice claim. (*Id.* ¶ 7.) In addition, Plaintiff's allegations do not establish Article III standing as to this claim for the reasons discussed in the next section.

      b.  <u>Failure to Provide Written Wage Statements</u>

In addition to the time-of-hire wage notice, employers must "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other." NYLL § 195-3. Plaintiff alleges that Defendants failed "to provide Plaintiff with any wage statements, upon each payment of his wages" within the meaning of NYLL § 195-3. (Compl., ECF No. 1, ¶ 31.) Plaintiff's allegations fail, however, to plead

---

[4] The Court notes that the NYLL only provides for damages for failing to provide initial wage notices and does not provide a right to recover damages for failing to provide annual notices. *See* NYLL § 195-1; *see also Thompson*, 2020 WL 5822455, at *5; *Pierre*, 2018 WL 2393158, at *5.

sufficient facts so as to establish Article III standing for this claim, and Plaintiff is therefore not entitled to a default judgment on this claim.

"The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Importantly, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). This includes claims over which the court has supplemental jurisdiction, even where the plaintiff has standing to bring jurisdiction-invoking federal claims. *See id.* at 351–52; *Sharehold Representative Servs. LLC v. Sandoz Inc.*, No. 12-CV-6154 (DLC), 2013 WL 4015901, at *7 (S.D.N.Y. Aug. 7, 2013) ("The fact that the claims arise from a common set of facts does not relieve the plaintiff of its obligation to demonstrate constitutional standing to sue for each one.").

The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quoting *Spokeo*, 578 U.S. at 341). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* Where the plaintiff does not establish a concrete injury fairly traceable to the statutory violation, the plaintiff lacks Article III standing and, in turn, the district court lacks subject matter jurisdiction to enter default judgment. *See, e.g., Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).

In this case, the allegations of the Complaint fail to establish a concrete injury resulting from Defendants' alleged failure to provide wage statements.[5] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that standing must be established "with the manner and degree of evidence required at the successive stages of the litigation"). Here, Plaintiff merely alleges that "Defendants failed to provide Plaintiff with wage statements, upon each payment of his wages, as required by NYLL § 195(3)," averring that this failure entitles him to statutory damages. (Compl., ECF No. 1, ¶¶ 71–72.) Absent any factual allegations of a concrete injury fairly traceable to Defendants' failure to provide wage statements, Plaintiff's claims, as alleged in the Complaint, do not demonstrate Article III standing. Consequently, the Court respectfully recommends denying Plaintiff's request for a default judgment on his wage statement claim, and dismissing the claim for lack of subject matter jurisdiction. *See Sevilla*, 2022 WL 954740, at *7; *see also Beh v. Cmty. Care Companions Inc.*, 19-CV-1417 (JLS) (MJR), 2022 WL

---

[5] This is not to say that a plaintiff could never have Article III standing to assert a wage statement claim. Courts have observed that the deprivation of wage statements "entails a significant risk of harm to the employees' concrete interest in being properly paid." *Imbarrato v. Banta Mgmt. Servs., Inc.*, 18-CV-5422 (NSR), 2020 WL 1330744, at *8–9 (S.D.N.Y. Mar. 20, 2020); *see also Hicks v. T.L. Cannon Mgmt. Corp.*, 13-CV-6455 (EAW), 2018 WL 2440732, at *5 (W.D.N.Y. Mar. 13, 2018). Although the Supreme Court subsequently clarified in *TransUnion* that the "risk of future harm" does not confer standing "in a suit for damages," the Court posited that a plaintiff might have a concrete injury where "exposure to the risk of future harm itself causes a *separate* concrete harm." 141 S. Ct. at 2210–11 & n.7 ("For example, a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm."); *see also Harty v. W. Point Realty, Inc.*, 28 F. 4th 435, 443 (2d Cir. 2022) (explaining that "*TransUnion* now makes clear that the 'material risk' standard applies only with respect to injunctive relief"). The Supreme Court also contemplated whether a plaintiff could establish standing by alleging "'downstream consequences'" from the defendant's failure to provide information as required by statute. *TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)) (observing that the FCRA plaintiffs "did not demonstrate, for example, that the alleged information deficit hindered their ability to correct erroneous information before it was later sent to third parties"); *see also Metcalf v. TransPerfect Translations Int'l, Inc.*, 19-CV-10104 (ER), 2022 WL 4661926, at *16–17 (S.D.N.Y. Sept. 30, 2022). In this case, Plaintiff has not alleged facts supporting either circumstance. *See id.* ("[T]o state a viable claim for statutory violations, the complaint must provide factually specific, non-conclusory allegations that they suffered a concrete harm as a result of the violations. Here, the [Complaint] has not alleged any such harm.").

5039391, at *7–8 (W.D.N.Y. Sept. 29, 2022); *Metcalf v. TransPerfect Translations Int'l, Inc.*, 19-CV-10104 (ER), 2022 WL 4661926, at *15–17 (S.D.N.Y. Sept. 30, 2022).

## IV.  Damages

Having found that Defendants' default constitutes an admission of liability with respect to all of Plaintiff's claims except Plaintiff's wage notice and statement claims, the Court now turns to an evaluation of damages. Plaintiff seeks a combination of compensatory damages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorney's fees and costs. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.*, 2020 WL 5519200, at *3.

### A.  Compensatory and Liquidated Damages

1.  *Applicable Law*

In determining damages not susceptible to simple mathematical calculations, Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The employer bears the burden of establishing that liquidated damages should not be awarded. *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 70–71 (2d Cir. 1997). However, because Defendants have not responded and have not carried their burden, liquidated damages are appropriate. (*See* Clerk's Entry of Default, ECF No. 13.)

An employee is also entitled to recover unpaid wages and liquidated damages under the NYLL. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689 (LLS) (FM), 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), *report and recommendation adopted*, No. 11-CV-4689 (LLS), 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). A plaintiff may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery. *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). However, a plaintiff is not entitled to double recovery of liquidated damages. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

Under the NYLL, willfulness is established where an employer "'knowingly, deliberately, or voluntarily'" underpays employees. *Moon v. Kwon*, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) (quoting *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998)). This standard is not appreciably different from the FLSA standard. *Id.* Plaintiff contends that Defendants committed the alleged acts "willfully." (Compl., ECF No. 1, ¶ 49.) Based on the many years Plaintiff alleges to have been underpaid, and Defendants' failure to appear, the Court recommends an award of liquidated damages under either the NYLL or the FLSA.

"In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071 (SAS) (AJP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted*, No. 08-CV-6071 (SAS) (AJP), 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); *see also Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002); *Zhao v.*

*East Harlem Laundromat, Inc.*, No. 07-CV-201, 2010 WL 4628294, at *6 (S.D.N.Y. Oct. 8, 2010). Accordingly, this Court has calculated the damages owed, based partially on the representations in Plaintiff's Complaint, as well as the documents submitted in support of his motion for default judgment. (*See* Compl., ECF No. 1; Pl.'s Calculation of Damages, ECF No. 16-8.) *See, e.g.*, *Rodriguez*, 784 F. Supp. 2d at 126 (relying on similar documents).

    2.  *Analysis*

As discussed above, Plaintiff argues that he is entitled to overtime based on his work for Defendants from 2016 to January 2022, for 70 hours per week.[6] (Compl., ECF No. 1, ¶¶ 20, 23.) Crediting his unrebutted claims, the Court finds that Plaintiff worked for over 302 weeks, between April 15, 2016, and January 31, 2022, as detailed in the charts below.[7] (*See id.* ¶ 7.)

    a.  <u>Minimum Wage Damages</u>

"For purposes of determining whether Plaintiff [was] paid the prevailing minimum wage, the Court must determine [his] regular hourly rate of pay." *Perez Campos*, 2018 WL 9945754, at *4. Under the FLSA, "[t]he regular hourly rate of pay of an

---

[6] As set forth above, Plaintiff alleges that Defendants paid him a flat weekly rate of approximately $460 from in or around January 2016 until in or around December 2017, $550 from in or around January 2018 until in or around December 2019, $750 from in or around January 2020 until in or around December 2020, and $800 from in or around January 2021 until in or around January 2022 for his work, regardless of how many hours he worked over 40 hours. (Compl., ECF No. 1, ¶ 24.)

[7] Plaintiff's proposed calculations use a somewhat different methodology for calculating the number of weeks worked, resulting in calculations that suggest more than 52 weeks in a given calendar year. (*See* Pl.'s Calculation of Damages, ECF No. 16-8.) Given that Plaintiff's allegations are premised on the claim that he received flat weekly pay, not daily rates, the Court calculates Plaintiff's damages based on 52-week calendar years for 2017 through 2021, and the number of additional days worked. The Court further notes that Plaintiff's damages calculation also does not take into consideration the operation of the six-year statute of limitations under the NYLL, which limits any recovery prior to April 15, 2016, as discussed above.

employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *see also* 29 C.F.R. § 778.325. Under the NYLL, the "regular hourly wage rate" for non-hospitality industry employees paid on a weekly basis "shall be determined by dividing the total hours worked during the week into the employee's total earnings." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16.

Under the applicable regulations,[8] Plaintiff's regular rate of pay is calculated by dividing his weekly pay by the number of hours worked, which equals $6.57 per hour for April 2016 through December 2017 ($460/70 = $6.57); $7.86 for January 2018 through December 2019 ($550/70 = $7.86); $10.71 for January 2020 through December 2020 ($750/70 = $10.71); and $11.43 for January 2021 through January 2022 ($800/70 = $11.43). (*See* Compl., ECF No. 1, ¶ 24.) Because Plaintiff's allegations establish that he

---

[8] The Department of Labor regulations make clear that:

If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112. In turn, the NYLL instructs that the overtime pay for "miscellaneous industries" should be calculated "in the manner and methods provided in" the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see also id.* § 142-2.16 ("The term *regular rate* shall mean the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings.").

was paid less than the New York City minimum wage throughout the statutory period, he is entitled to minimum wage damages.[9]

Throughout the relevant time period of Plaintiff's employment, the New York City minimum wage was higher than the federal minimum wage. Under the principle that "the law providing the greatest recovery will govern," the minimum wage damages owed to Plaintiff are calculated based on the New York City minimum wage. *Charvac v. M & T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015). Plaintiff's minimum wage damages are calculated by taking the difference between the plaintiff's regular rate of pay and the New York City minimum wage during the relevant time periods, multiplied by the number of non-overtime hours worked per week or day as follows:[10]

---

[9] The Court notes that Plaintiff's calculations appear to rest on the assumption that the flat rate compensation here was intended to pay only for the first 40 hours worked each week. (*See* Pl.'s Damages Calculation, ECF No. 16-8.) However, given that Plaintiff contends that he continuously worked 70 hours a week for an extended period from the outset of his employment, the allegations demonstrate that Plaintiff and Defendants had agreed "at least implicitly," that Plaintiff "would work more than 40 hours per week for [his] weekly salary." *Ayala*, 2016 WL 5092588, at *23; *see also, e.g.*, *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (observing that when the plaintiff's testimony established that when he was first hired, he was told he would work 54 hours per week, and then in fact worked 54 hours each week for the same weekly salary throughout his employment, the court must conclude that "the plaintiff and the defendants had an understanding that the plaintiff's weekly salary was intended to compensate him for 54 hours of work per week"). Under the applicable regulation, and given the facts alleged, the Court finds that Plaintiff's regular rate of pay should be calculated by dividing his weekly salary by the hours actually worked. *See supra* note 8. The Court further notes that, due to his approach, Plaintiff only included $2,600 in minimum wage claims in his damages calculation, whereas the Court calculates the minimum wage damages at a much higher amount. (*See id.*)

[10] Because Plaintiff is entitled to recover starting on April 15, 2016, due to the operative NYLL statute of limitations, the Court starts the calculation on that date and ends the calculation on January 30, 2022. For individual daily calculations, the Court calculates Plaintiff's compensation based on the allegations in the Complaint as to the number of hours worked per day of the week. Plaintiff has stated that he typically worked a 9-hour day on Sundays, 11-hour days on Tuesdays and Wednesdays, and 13-hour days on Thursdays, Fridays, and Saturdays. (*See* Compl., ECF No. 1, ¶ 22.) The Court does not add an additional day for January 31, 2022,

| Start Date | End Date | Number of Weeks or Day of the Week | Regular Rate of Pay | NYS Min. Wage | Difference Between NYS Min. Wage and Pay | Number of Hours Worked (weeks x 40) or 8 Hours Worked Per Day | Min. Wage Total (40 hours per week or 8 hours per day) |
|---|---|---|---|---|---|---|---|
| 4/15/2016 | 12/29/2016 | 37 | $6.57 | $9.00 | $2.43 | 1480 | $3,596.40 |
| | 12/30/2016 | Friday | $6.57 | $9.00 | $2.43 | 8 | $19.44 |
| 12/31/2016 | 12/29/2017 | 52 | $6.57 | $11.00 | $4.43 | 2080 | $9,214.40 |
| | 12/30/2017 | Saturday | $6.57 | $11.00 | $4.43 | 8 | $35.44 |
| 12/31/2017 | 12/29/2018 | 52 | $7.86 | $13.00 | $5.14 | 2080 | $10,691.20 |
| | 12/30/2018 | Sunday | $7.86 | $13.00 | $5.14 | 8 | $41.12 |
| 12/31/2018 | 12/29/2019 | 52 | $7.86 | $15.00 | $7.14 | 2080 | $14,851.20 |
| | 12/30/2019 | Monday | $7.86 | $15.00 | $7.14 | 0 | $0.00 |
| 12/31/2019 | 12/28/2020 | 52 | $10.71 | $15.00 | $4.29 | 2080 | $8,923.20 |
| | 12/29/2020 | Tuesday | $10.71 | $15.00 | $4.29 | 8 | $34.32 |
| | 12/30/2020 | Wednesday | $10.71 | $15.00 | $4.29 | 8 | $34.32 |
| 12/31/2020 | 12/29/2021 | 52 | $11.43 | $15.00 | $3.57 | 2080 | $7,425.60 |
| | 12/30/2021 | Thursday | $11.43 | $15.00 | $3.57 | 8 | $28.56 |
| 12/31/2021 | 1/27/2022 | 4 | $11.43 | $15.00 | $3.57 | 160 | $571.20 |
| | 1/28/2022 | Friday | $11.43 | $15.00 | $3.57 | 8 | $28.56 |
| | 1/29/2022 | Saturday | $11.43 | $15.00 | $3.57 | 8 | $28.56 |
| | 1/30/2022 | Sunday | $11.43 | $15.00 | $3.57 | 8 | $28.56 |
| | | | | | | | **$55,552.08** |

b. <u>Overtime Damages</u>

The FLSA requires that an employee receive compensation for his employment in excess of 40 hours at a rate not less than 1.5 times the regular rate of pay. 29 U.S.C. § 207(a). In the event the regular rate falls below the applicable minimum wage, an employee is entitled to compensation at a rate of 1.5 times the applicable minimum wage. *See Perez Campos*, 2018 WL 9945754, at *7–8.

---

which was a Monday, because the Complaint does not claim that Plaintiff worked on Mondays. (*Id.*)

Because Plaintiff has already been paid a weekly amount for these hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate (minimum wage times 1.5) by the total number of overtime hours worked. *See, e.g.*, *Jacome v. Optical 49, Inc.*, No. 20-CV-2615 (DG) (PK), 2021 WL 3375134, at *11 (E.D.N.Y. July 9, 2021), *report and recommendation adopted*, No. 20-CV-2615 (DG) (PK), 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021) (using this method to calculate the overtime award where plaintiff was paid a weekly flat rate despite working over 40 hours per week); *Perez Campos*, 2018 WL 9945754, at *6 (same). The overtime damages are accordingly calculated as follows:[11]

| Start Date | End Date | Number of Weeks or Day of the Week | Regular Rate of Pay | NYS Min. Wage | Overtime (OT) Wage = NYS Min. Wage x 1.5 | Diff. Between OT Wage and Pay | Number of OT Hours Worked (weeks x 30) or OT Per Day | OT Wage Total |
|---|---|---|---|---|---|---|---|---|
| 4/15/2016 | 12/29/2016 | 37 | $6.57 | $9.00 | $13.50 | $6.93 | 1110 | $7,692.30 |
| | 12/30/2016 | Friday | $6.57 | $9.00 | $13.50 | $6.93 | 5 | $34.65 |
| 12/31/2016 | 12/29/2017 | 52 | $6.57 | $11.00 | $16.50 | $9.93 | 1560 | $15,490.80 |
| | 12/30/2017 | Saturday | $6.57 | $11.00 | $16.50 | $9.93 | 5 | $49.65 |
| 12/31/2017 | 12/29/2018 | 52 | $7.86 | $13.00 | $19.50 | $11.64 | 1560 | $18,158.40 |
| | 12/30/2018 | Sunday | $7.86 | $13.00 | $19.50 | $11.64 | 1 | $11.64 |
| 12/31/2018 | 12/29/2019 | 52 | $7.86 | $15.00 | $22.50 | $14.64 | 1560 | $22,838.40 |
| | 12/30/2019 | Monday | $7.86 | $15.00 | $22.50 | $14.64 | 0 | $0.00 |
| 12/31/2019 | 12/28/2020 | 52 | $10.71 | $15.00 | $22.50 | $11.79 | 1560 | $18,392.40 |
| | 12/29/2020 | Tuesday | $10.71 | $15.00 | $22.50 | $11.79 | 3 | $35.37 |
| | 12/30/2020 | Wednesday | $10.71 | $15.00 | $22.50 | $11.79 | 3 | $35.37 |
| 12/31/2020 | 12/29/2021 | 52 | $11.43 | $15.00 | $22.50 | $11.07 | 1560 | $17,269.20 |
| | 12/30/2021 | Thursday | $11.43 | $15.00 | $22.50 | $11.07 | 5 | $55.35 |
| 12/31/2021 | 1/27/2022 | 4 | $11.43 | $15.00 | $22.50 | $11.07 | 120 | $1,328.40 |
| | 1/28/2022 | Friday | $11.43 | $15.00 | $22.50 | $11.07 | 5 | $55.35 |

[11] The Court notes that Plaintiff's proposed damages calculation includes overtime rates that are as high as two times the prevailing minimum wage due to the assumption that the regular rate should be calculated by dividing Plaintiff's weekly pay by 40 hours. (*See* Pl.'s Calculation of Damages, ECF No. 16-8.) The Court does not recommend adopting Plaintiff's calculations for the reasons discussed herein.

| Start Date | End Date | Number of Weeks or Day of the Week | Regular Rate of Pay | NYS Min. Wage | Overtime (OT) Wage = NYS Min. Wage x 1.5 | Diff. Between OT Wage and Pay | Number of OT Hours Worked (weeks x 30) or OT Per Day | OT Wage Total |
|---|---|---|---|---|---|---|---|---|
| | 1/29/2022 | Saturday | $11.43 | $15.00 | $22.50 | $11.07 | 5 | $55.35 |
| | 1/30/2022 | Sunday | $11.43 | $15.00 | $22.50 | $11.07 | 1 | $11.07 |
| | | | | | | | | **$101,513.70** |

c. <u>Spread-of-Hours Compensation</u>

As discussed above, "an employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. Plaintiff alleges that he worked in excess of ten or more hours per day approximately five days per week during the relevant statutory period. (Compl., ECF No. 1, ¶ 27.) Plaintiff is entitled to spread of hours damages as follows:

| Start Date | End Date | Number of Weeks or Day of the Week | NYS Min. Wage | Hours for Spread of Hours Pay (weeks x 5) | Spread of Hours Total (hours x min. wage) |
|---|---|---|---|---|---|
| 4/15/2016 | 12/29/2016 | 37 | $9.00 | 185 | $1,665.00 |
| | 12/30/2016 | Friday | $9.00 | 1 | $9.00 |
| 12/31/2016 | 12/29/2017 | 52 | $11.00 | 260 | $2,860.00 |
| | 12/30/2017 | Saturday | $11.00 | 1 | $11.00 |
| 12/31/2017 | 12/29/2018 | 52 | $13.00 | 260 | $3,380.00 |
| | 12/30/2018 | Sunday | $13.00 | 0 | 0 |
| 12/31/2018 | 12/29/2019 | 52 | $15.00 | 260 | $3,900.00 |
| | 12/30/2019 | Monday | $15.00 | 0 | 0 |
| 12/31/2019 | 12/28/2020 | 52 | $15.00 | 260 | $3,900.00 |
| | 12/29/2020 | Tuesday | $15.00 | 1 | $15.00 |
| | 12/30/2020 | Wednesday | $15.00 | 1 | $15.00 |
| 12/31/2020 | 12/29/2021 | 52 | $15.00 | 260 | $3,900.00 |
| | 12/30/2021 | Thursday | $15.00 | 1 | $15.00 |
| 12/31/2021 | 1/27/2022 | 4 | $15.00 | 20 | $300.00 |
| | 1/28/2022 | Friday | $15.00 | 1 | $15.00 |

| Start Date | End Date | Number of Weeks or Day of the Week | NYS Min. Wage | Hours for Spread of Hours Pay (weeks x 5) | Spread of Hours Total (hours x min. wage) |
|---|---|---|---|---|---|
| | 1/29/2022 | Saturday | $15.00 | 1 | $15.00 |
| | 1/30/2022 | Sunday | $15.00 | 0 | 0 |
| | | | | | $20,000.00 |

\*    \*    \*    \*    \*

Based on the foregoing analysis, the Court respectfully recommends that Plaintiff be awarded **$177,065.78** in compensatory damages, based upon minimum wage damages equal to **$55,552.08**; overtime damages in the amount of **$101,513.70**; and spread of hours pay of **$20,000**.

### B. Statutory Damages

Next, Plaintiff claims he is entitled to recover under the statutory damages provisions of the NYLL for Defendants' repeated violations of New York State's notice and pay stub requirements. *See generally* NYLL § 198-1-b; NYLL § 198-1-d. For the reasons set forth above, the Court respectfully recommends dismissing these claims.

### C. Liquidated Damages and Prejudgment Interest

"'It is well settled that in an action for violations of the [FLSA,] prejudgment interest may not be awarded in addition to liquidated damages.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (per curiam)). Because FLSA liquidated damages are meant to be compensatory and not punitive, prejudgment interest is not needed to restore plaintiffs to a position they would have been in absent the wage-protection violation. *See Fermin*, 93 F. Supp. 3d at 48; *see also Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583 (1942).

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and prejudgment interest. *See Begum*, 2015 WL 223780, at *3. This is because New York State views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Constr., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012), *report and recommendation adopted*, No. 11-CV-5788 (ARR), 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) (explaining that liquidated damages under the NYLL are "punitive in purpose").

The availability of both liquidated damages and prejudgment interest under the NYLL "remains true even where liability is found not only under the NYLL but also under the FLSA." *Begum*, 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor USA Inc.*, No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted*, No. 10-CV-4313 (NG), 2013 WL 2152176 (E.D.N.Y. May 17, 2013). However, plaintiffs may not recover prejudgment interest for wages compensated under the FLSA. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011). Here, since Plaintiff is entitled to an equivalent award of compensatory overtime and minimum wage damages under either the NYLL or the FLSA, the Court finds that Plaintiff is entitled to prejudgment interest.

The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49 (collecting cases); *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district

calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F. Supp. 3d at 49). Under this approach, interest is to be accrued at the simple rate, "from [the midpoint date] . . . through the date judgment is entered." *See Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013).

Here, given that the relevant dates of Plaintiff's employment are from April 15, 2016, to January 31, 2022, the midpoint of Plaintiff's employment with Defendants was approximately March 10, 2019. Accordingly, the Court recommends that prejudgment interest be awarded on Plaintiff's compensatory damages award of $177,065.78 from March 10, 2019, to the date judgment is entered at a per diem interest rate of **$43.66**. ($177,065.78 × 0.09/365).

### D. Post-Judgment Interest

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021). In *Fermin*, the court awarded the plaintiffs post-judgment interest on all sums awarded concerning their FLSA and NYLL wage-and-hours claims. *See Fermin*, 93 F. Supp. 3d at 53. The same approach is appropriate here. Therefore, the Court respectfully recommends that Defendants be ordered to pay Plaintiff post-judgment interest, to be calculated from the date the Clerk

of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C. § 1961(a).

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends dismissal of Plaintiff's wage notice and statement claims. With respect to Plaintiff's remaining claims, the Court recommends finding that entry of default is warranted and that, under the standard for a default judgment, Plaintiff has established that Defendants violated the FLSA and the NYLL.

Accordingly, the Court respectfully recommends that Plaintiff's motion be granted in part, and that a default judgment be entered against Defendants Ms. Wine Shop Inc. d/b/a Best Buy Wine & Spirits and Juan Lopez jointly and severally. With respect to damages, the Court recommends that Plaintiff be awarded a sum of **$354,131.56**, comprised as follows: **$177,065.78** in compensatory damages and **$177,065.78** in liquidated damages. The Court further recommends that prejudgment interest on Plaintiff's unpaid overtime wages, minimum wage damages, and spread of hours compensation of **$177,065.78** be awarded at a per diem interest rate of **$43.66** from March 10, 2019, to the date of this Court's judgment, and that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). Finally, the Court recommends that Plaintiff be awarded a fifteen-percent increase in damages under the NYLL, not including post-judgment interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal.[12]

---

[12] New York Labor Law provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.,*

\*    \*    \*    \*    \*

This report and recommendation will be filed electronically and a copy sent by mail to Defendants Ms. Wine Shop Inc. d/b/a Best Buy Wine & Spirits and Juan Lopez. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Pamela K. Chen, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives

---

No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, No. 16-CV-3922 (CBA) (SMG), 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent increase to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at *7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).

the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

      **SO ORDERED.**

Dated:  Brooklyn, New York
        November 15, 2022

 

                                      _____
                                      TARYN A. MERKL
                                      UNITED STATES MAGISTRATE JUDGE